UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIM KINETHA RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-0260 |
| ) | JUDGE ECHOLS |
| BBG PRODUCTION TECHNOLOGIES, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment (Docket Entry No. 6), to which the Plaintiff filed a response (Docket Entry No. 13), and Defendant filed a reply (Docket Entry No. 28).

## I. FACTS

This case is brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1). Plaintiff Kim Russell ("Plaintiff") was employed as a production worker by Defendant BBG Production Technologies, Inc. ("BBG") at its LaVergne, Tennessee facility. BBG's corporate headquarters is located in Tracy, California. BBG does not operate any facilities other than those located in Tracy and LaVergne. BBG has never employed 50 or more employees at the LaVergne facility or within a 75-mile radius of its LaVergne facility.

Plaintiff worked on Friday, October 27, 2006, but she became ill after her shift ended that day. Plaintiff suffered from nausea, vomiting, diarrhea and gastroenteritis. At approximately 5:00 a.m. on Saturday, October 28, Plaintiff called BBG and left a voicemail message that she was ill and could not work that day as scheduled. BBG was closed on Sunday, October 29. Plaintiff again called in sick before her work shifts on Monday and Tuesday, October 30 and 31.

Plaintiff was treated by a physician, who provided her with a completed Certificate of Health Care Provider form. (Docket Entry No. 11-2.) After seeing her physician on October 31,

1

Plaintiff contacted BBG by telephone and reported that she had a doctor's note and she was released to return to work the following day. During the call, BBG directed Plaintiff not to report to work for her normal shift, but to attend a meeting at BBG at 11:30 a.m. on November 1, 2006.

At the November 1 meeting, Plaintiff presented her supervisors with the doctor's note to support her claim that she had been absent from work due to a serious health condition. The supervisors told Plaintiff they would review the form and they sent her home because she did not look well. On November 2, BBG informed Plaintiff that her employment was terminated due to excessive absences. On October 4, 2006, Plaintiff had received a written warning informing her that she had accrued 2½ "occurrences" and that if she received "a half of an occurrence, putting her at three occurrences again before any of these drop off she [would] be terminated as discussed in the last written warning." (Docket Entry No. 23-3.)

Plaintiff does not have any legal training. The only knowledge she had concerning the FMLA prior to the termination of her employment was gained by reading a written notice posted at the work site and her Employee Handbook. The posted notice, entitled "Your Rights Under the Family and Medical Leave Act of 1993," (Docket Entry No. 23-4) began:

> FMLA requires covered employers to provide up to 12 weeks of unpaid, job-protected leave to "eligible" employees for certain family and medical reasons. Employees are eligible if they have worked for their employer for at least one year, and for 1,250 hours over the previous 12 months, and if there are at least 50 employees within 75 miles. The FMLA permits employees to take leave on an intermittent basis or to work a reduced schedule under certain circumstances.

(Id.) Plaintiff also read the section of the Employee Handbook entitled "Family/Medical Leave Eligibility," which began:

> Employees who have more than 12 months of service, who have worked at least 1,250 hours during the previous 12-month period before the date the leave is to begin, and who are employed at a work site where the Company maintains on the payroll (as of the date of the leave request) at least 50 part- or full-time employees within 75 miles (measured in road miles) of the work site where the employee requesting the leave is employed, are eligible under Federal (FMLA) . . . family leave laws to take up to a maximum of 12 workweeks of unpaid family/medical leave within a 12-month period.

(Docket Entry No. 19 at 3.)

2

It is undisputed that Plaintiff had been employed for more than 12 months and had worked at least 1,250 hours during the previous 12-month period before seeking FMLA leave on November 1, 2006, after her illness occurred. BBG contends that Plaintiff is excluded from FMLA eligibility because BBG did not employ 50 or more employees at the LaVergne facility or within a 75-mile radius of the facility at the time Plaintiff sought FMLA coverage on November 1.

Plaintiff claims that BBG interfered with her FMLA rights by terminating her employment even though she produced a doctor's excuse for a serious health condition. She also claims that BBG should be equitably estopped from contending that she is not eligible for FMLA protection. Plaintiff did not know at any point during her employment the total number of BBG employees employed at the LaVergne facility.[1] Plaintiff asserts that she interpreted the notice explaining FMLA rights posted at her job site and the Employee Handbook to mean that she was covered by the FMLA and she relied on those documents. Plaintiff states that, had she known her absences between October 28 and November 1 were not protected by the FMLA, she would have reported for work, even though she was ill, in order to save her job.

Before filing an Answer, BBG filed a Motion to Dismiss Or, In The Alternative, For Summary Judgment on the ground that Plaintiff is not eligible for FMLA coverage because BBG

---

[1] In support of the Motion for Summary Judgment, BBG's Human Resources Coordinator, Robin Davis, reported that 44 persons were employed at BBG during the relevant time frame. (Docket Entry No. 6, Davis Decl. ¶ 7 & Ex. 1.) Plaintiff produces evidence that Kim Morgan was employed at BBG during the pay period of October 21, 2006 through November 3, 2006, although she was not physically working due to a work-related injury. (Docket Entry No. 18, Morgan Decl. ¶¶ 4-7; Docket Entry No. 17, Russell Decl. ¶ 13.) Plaintiff cites Morgan's situation to cast doubt on Davis' report of the number of persons employed, suggesting that, if Morgan was omitted from the list of employees, others also may have been omitted, and the total employee count may have been 50 or more.

Davis subsequently filed a second declaration conceding the error in her first report and stating that two other persons besides Morgan were on workers' compensation leave during the relevant pay period, bringing the total employee head count to 47. (Docket Entry No. 23, Davis Decl. ¶¶ 7-12.)

Plaintiff produces nothing to contradict BBG's evidence that it employed 47 people between October 28, 2006 and November 1, 2006, and in fact, Plaintiff concedes for purposes of this summary judgment motion that BBG never employed 50 or more employees at its LaVergne facility or within 75 miles of that facility. (Docket Entry No. 15, Plaintiff's Response to Defendant's Statement of Undisputed Facts ¶ 9.)

3

did not employ 50 or more employees at the LaVergne facility or within a 75-mile radius of the facility at the time Plaintiff sought FMLA coverage on November 1. In briefing the Motion, both parties supplied the Court with evidence not mentioned in or attached to the Complaint or the Amended Complaint. Therefore, under Federal Rules of Civil Procedure 12(b) and 56, the Court converts the Motion to Dismiss to a Motion for Summary Judgment.

## II. STANDARD OF REVIEW

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson, 477 U.S. at 248. If so, summary judgment dismissal is inappropriate.

To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

## III. ANALYSIS

**A. FMLA interference claim**

To prevail on her FMLA interference claim brought pursuant to 29 U.S.C. § 2615(a)(1), Plaintiff must establish that BBG interfered with her FMLA right to medical leave or to

4

reinstatement following FMLA leave. See Cavin v. Honda of America Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003). Plaintiff must show that (1) she is an eligible employee; (2) BBG is a covered employer; (3) she is entitled to leave under the FMLA; (4) she gave BBG notice of her intent to take leave; and (5) BBG denied her FMLA benefits or interfered with FMLA rights to which she was entitled. See id. Plaintiff cannot satisfy the first and third elements of her legal claim.

The pertinent statute provides:

(2) Eligible employee

(A) In general

The term "eligible employee" means an employee who has been employed--
> **(i)** for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> **(ii)** for at least 1,250 hours of service with such employer during the previous 12-month period.

(B) Exclusions

The term "eligible employee" does not include--
. . .

> **(ii)** any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.

29 U.S.C.A. § 2611. The accompanying federal regulation provides that an "employee" is "an employee of a covered employer who: (1) [h]as been employed by the employer for at least 12 months, and (2) [h]as been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave, and (3) [i]s employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 C.F.R. § 825.110. The regulation explains:

> (f) Whether 50 employees are employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives notice of the need for leave. Whether the leave is to be taken at one time or on an intermittent or reduced leave schedule basis, once an employee is determined eligible in response to that notice of the need for leave, the employee's eligibility is not affected by any subsequent change in the number of employees employed at or within 75 miles of the

5

> employee's worksite, for that specific notice of the need for leave. Similarly, an employer may not terminate employee leave that has already started if the employee-count drops below 50. For example, if an employer employs 60 employees in August, but expects that the number of employees will drop to 40 in December, the employer must grant FMLA benefits to an otherwise eligible employee who gives notice of the need for leave in August for a period of leave to begin in December.

29 C.F.R. § 825.110.

The notice BBG posted at Plaintiff's worksite and BBG's Employee Handbook accurately and completely informed BBG employees concerning the law applicable to FMLA leave and the pertinent considerations required by law in determining whether any particular employee is eligible for FMLA leave. The undisputed evidence before the Court shows that BBG never employed 50 or more employees at its LaVergne facility or within a 75-mile radius of that facility and certainly not on November 1, 2006, when Plaintiff sought retroactive FMLA leave for her absences. Therefore, Plaintiff is excluded from eligibility for FMLA leave pursuant to 29 U.S.C. § 2611(2)(A) & (B) and 29 C.F.R. § 825.110. BBG is entitled to summary judgment on this issue, as Plaintiff cannot satisfy the first and third elements of her FMLA interference claim. See Cavin, 346 F.3d at 719.

**B. Equitable estoppel**

"The doctrine of equitable estoppel is a judicial doctrine of equity which operates apart from any underlying statutory scheme." Mutchler v. Dunlap Memorial Hosp., 485 F.3d 854, 861 (6th Cir. 2007). The doctrine of equitable estoppel may apply where the employer initially provides an employee with notice of eligibility for leave but later seeks to challenge that eligibility. Id.; Sorrell v. Rinker Materials Corp., 395 F.3d 332, 336 (6th Cir. 2005) (remanding to district court to determine whether equitable estoppel applied to bar employer from challenging employee's entitlement to leave under the FMLA). Such is not the case here because BBG did not supply Plaintiff with notice of her eligibility for FMLA leave and then later seek to challenge her eligibility.

Even assuming equitable estoppel may apply in this case, to invoke the doctrine Plaintiff must show: "(1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that

6

the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation." Mutchler, 485 F.3d at 861.

BBG's representations of material fact were contained in the posted notice and in the Employee Handbook concerning FMLA rights of employees. As stated above, these documents provided BBG employees with an accurate statement of the law on FMLA eligibility. BBG was aware of the applicable law and shared it with BBG employees as the law required it to do. BBG did not affirmatively misstate the law in any way, and Plaintiff does not argue otherwise. Plaintiff cannot prove that she was unaware of the true facts concerning the law on FMLA eligibility, particularly that she was ineligible for FMLA coverage unless BBG employed 50 or more employees at its LaVergne facility or within a 75-mile radius of the facility. Because BBG did not misrepresent FMLA law in its employee documents, Plaintiff cannot show that she detrimentally relied on the substance of those documents.

The crux of Plaintiff's position is that she interpreted the posted notice and the Employee Handbook to mean that she was covered by the FMLA and BBG misled her by omission when it failed to tell her that it did not employ 50 or more employees at its LaVergne facility or within a 75-mile radius of that facility, rendering her ineligible for FMLA leave. Plaintiff relies primarily on Minard v. ITC Deltacom Communications, Inc., 447 F.3d 352 (5th Cir. 2006). In that case, the employer granted an employee's request for FMLA leave in a written memorandum. In reliance on the memorandum, the employee had surgery for a serious medical condition. The employer then realized that it did not employ 50 or more employees at the pertinent worksite, rendering the employee ineligible for FMLA leave. Upon the employee's return to work, the employer did not restore the employee to her position but terminated her employment. Id. at 354. The Fifth Circuit held that "an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an 'eligible employee' and entitled to leave under FMLA, and has reason

7

to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment." Id. at 359. The instant case can be distinguished from Minard because BBG did not make a definite but erroneous representation to Plaintiff that she was an eligible employee under the FMLA upon which she might rely to her detriment.

Plaintiff additionally cites Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 493-94 (8th Cir. 2002), but that case also involved an affirmative misrepresentation of FMLA coverage in a letter sent by the employer to the employee and upon which the employee relied to obtain medical treatment. Understandably, the Eighth Circuit upheld the district court's determination that the employer should be equitably estopped from challenging the employee's FMLA eligibility after the employee detrimentally relied on the letter. Here, BBG did not at any time guarantee Plaintiff FMLA coverage in a letter sent to her, as occurred in Duty.

The Second Circuit case of Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 727 (2d Cir. 2001), applying equitable estoppel, is not controlling here. In that case, the employer did not inform its employees of FMLA eligibility requirements, including the provision that an employee must work at least 1,250 hours in the prior 12-month period. Id. at 715. The employer specifically granted medical leave to an employee for an operation and recovery time, but later realized the employee was ineligible for FMLA coverage because she had not worked the requisite 1,250 hours. Id. at 713. When the employee returned to work, she was told her position no longer existed due to downsizing and her employment was terminated. Id. The Second Circuit concluded that "an employer who remains silent when its employee announces that she plans to take medical leave is effectively misleading that employee into believing that she is protected by the FMLA. Under these circumstances, [the employer's] silence in the face of its legal duty to inform [the plaintiff] of her ineligibility is properly construed as an affirmative misrepresentation." Id. at 726. Here, BBG did inform its employees, including Plaintiff, of the FMLA eligibility requirements,

and BBG did not expressly grant Plaintiff leave for her illness between October 28, 2006 and November 1, 2006.

As to whether the employer's silence can constitute misrepresentation sufficient to warrant application of equitable estoppel, the rule in Kosakow does not apply here. The Sixth Circuit has held that "for silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to 'bad faith.'" TWM Mfg. Co. v. Dura Corp., 592 F.2d 346, 350 (6th Cir. 1979), *aff'd in part and rev'd in part on other grounds*, 722 F.2d 1261 (6th Cir. 1983); Kellogg Co. v. Exxon Corp., 209 F.3d 562, 574 (6th Cir. 2000) (estoppel "requires more than a showing of mere silence . . . [plaintiff] must show that it had been misled . . . through actual misrepresentations, affirmative acts of misconduct, intentional misleading silence[.]"), *overruled on other grounds*, Moseley v. Secret Catalogue, Inc., 537 U.S. 418 (2003).

In Rocha v. Sauder Woodworking Co., 221 F.Supp.2d 818, 819 (N.D. Ohio 2002), the employee had worked less than 1,250 hours, but the human resources manager gave the employee a leave form to complete and told her that, to obtain FMLA leave, she would have to have her doctor sign the form and return it to the company. The manager did not mention that the employee would be ineligible for FMLA leave if she had not worked 1,250 hours. Id. The employee returned the completed form to the company, but the employer later challenged the employee's entitlement to FMLA coverage. Id. The district court held that, because the employee did not present evidence that the human resources manager either intentionally or in bad faith failed to inform her she was ineligible for FMLA leave, equitable estoppel did not apply and the employer was entitled to summary judgment. Id. at 821-822. Plaintiff here has not produced any evidence that BBG intentionally or in bad faith failed to inform her that BBG's employment of less than 50 people at LaVergne would render Plaintiff ineligible for FMLA benefits. See also Massengill v. Anderson County Bd. of Educ., 478 F.Supp.2d 1004, 1008 (E.D. Tenn. 2007) ("Defendant was not required to notify Plaintiff that she did not qualify for FMLA leave and has not waived the issue[] of FMLA eligibility by failing to do so.")

9

Plaintiff also cites Fry v. First Fidelity Bancorporation, 1996 WL 36910 (E.D. Pa. 1996), but that case is not on point.  In Fry, the employer adopted a policy of allowing its employees to take an additional four weeks of family leave, but failed to provide adequate notice to employees that the first twelve weeks would be counted as FMLA leave and that, by taking additional weeks of leave pursuant to company policy, the employee would forfeit FMLA rights.  Id. at *1.  The district court held that "if an employer fails to adequately notify its employees of the impact of its own family leave policies on the rights provided by the FMLA, particularly where there is an apparent conflict between the employer's policy and the employees' FMLA rights, such conduct can constitute interference with an employee's FMLA rights if it causes an employee to unwittingly forfeit the protection of the FMLA."  Id. at *5.  Equitable estoppel was not at issue in Fry and the facts in that case are inapposite to the case presented here.

## IV.  CONCLUSION

Plaintiff cannot establish the elements of her FMLA interference claim or the elements of equitable estoppel to prevail in this case.  BBG provided Plaintiff with notice of applicable FMLA eligibility requirements and it is undisputed that BBG did not make any affirmative misrepresentations to Plaintiff concerning her FMLA eligibility.  BBG did not expressly inform Plaintiff that BBG employed less than 50 persons at the LaVergne facility or within a radius of 75 miles of that facility, but BBG's silence on this point, without Plaintiff's production of evidence showing BBG's intentional silence or bad faith, is insufficient under Sixth Circuit law to withstand the summary judgment motion.  Accordingly, BBG's alternative Motion for Summary Judgment will be granted and its Motion to Dismiss will be denied.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE